ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. DRIVER.

(Court of Civil Appeals of Texas. Dallas. April 29, 1911. Rehearing Denied May 20, 1911.)

1. RAILROADS (§ 400*)—PERSONS IN YARDS—CONTRIBUTORY NEGLIGENCE.

It is not negligence per se for one to enter railway yards, especially where they are easily accessible to the public and have been habitually used by many people for many years with the company's consent; nor does such person assume the risk of being struck by trains negligently operated.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 400.*]

2. RAILROADS (§ 394*)—PEDESTRIANS IN RAILWAY YARDS — INJURY — PLEADING — REQUISITES.

A petition against a railway company for injury to a pedestrian struck by a car in a railway yard is not insufficient for failing to show such necessity or purpose for public use of the yards as to make plaintiff a licensee; allegation that the yards had been habitually used for many years by the public as a passway with defendant's consent sufficiently showing a right of action without a more specific showing that plaintiff was not a trespasser.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 394.*]

3. RAILROADS (§ 398*)—PERSONS IN YARDS—INJURY—EVIDENCE—SUFFICIENCY.

In an action for injury to a pedestrian struck by a car in a railroad yard, evidence *held* to sustain recovery on the theory of defendant's negligence and plaintiff's freedom from contributory negligence.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 398.*]

4. RAILROADS (§ 401*)—TRIAL (§ 194*)—PEDESTRIANS IN RAILWAY YARDS — INJURY — INSTRUCTIONS.

An instruction to find for plaintiff if he was injured in defendant's switch yards, if the yards were habitually used by the public with defendant's expressed or implied knowledge and acquiescence, if defendant failed to have some one on the car which struck plaintiff to notify him of its approach, or if an employé on the car negligently failed to give such notice, and if such negligence proximately caused plaintiff's injuries and he used ordinary care for his own safety, was not erroneous as being confusing nor as being upon the evidence.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 401;* Trial, Dec. Dig. § 194.*]

5. RAILROADS (§ 398*) — CONTRACTS — USE BY PUBLIC—EVIDENCE—SUFFICIENCY.

Evidence, in an action for injury to a pedestrian struck by a railway car, *held* sufficient to raise an issue as to whether the place of accident was used by the public in such a way as to require the company in operating trains to keep a lookout for pedestrians.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 398.*]

Appeal from District Court, Hunt County; T. D. Montrose, Judge.

Action by D. O. Driver against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

E. B. Perkins and B. F. Crosby, for appellant. J. P. Yates and T. D. Starnes, for appellee.

RAINEY, C. J. Appellee sued the appellant to recover damages for personal injuries sustained by him in defendant's yards at Ft. Worth, by being struck and run over by a moving train which caused the loss of a hand. Defendant answered by general and special demurrers, the general denial, and specially that plaintiff was intoxicated and a trespasser, and also contributory negligence. A trial resulted in a verdict and judgment in favor of plaintiff for $4,000, from which appellant prosecutes this appeal.

[1] The first assignment of error is: "The court erred in overruling the defendant's general demurrer to plaintiff's petition. It was error to overrule the said general demurrer because the petition shows that, at the time of the alleged accident, plaintiff was walking so near one of defendant's tracks as to be struck by one of its cars as same was being operated along said track, and that the position occupied by him at the time was inherently dangerous and exposed him to the risk and hazard of being struck by such train, and it appears that he was voluntarily occupying such exposed and dangerous position without any apparent reason or necessity; and, under the facts alleged in the petition, the plaintiff was guilty of negligence that caused or contributed to cause his injuries, and assumed the risks and dangers whereby he was injured, and is therefore not entitled to recover."

The charging part of the petition reads as follows:

"That the defendant maintains, and on or about the 3d day of September, 1909, did maintain, in said city of Ft. Worth, a switch-yard and system of switch tracks together with its main lines in said switchyard. That said switchyard and tracks were open to and easily accessible by the public, and that the same were habitually used by the public, and that great numbers of people daily resorted to and passed along, through, and across said switchyards and switch tracks, and persons were so frequently thereon that the defendant and its employés engaged in the operation of its engines and trains over said tracks might reasonably anticipate and expect persons to be on and about said tracks at any time. Plaintiff says that said use of said switchyards by the public had been made for a long time prior to said 3d day of September, 1909, was known to the defendant, and said use was allowed, permitted, and acquiesced in by defendant, and had been so allowed, permitted, and ac-

quiesced in for a long time prior to said date. Plaintiff says that at said time there was in force in said city of Ft. Worth valid ordinances, as follows, to wit:

" 'Sec. 773. Speed of locomotives and cars. —Any person or company who shall in this city run or cause to be run any locomotive or car at a greater rate of speed than six miles per hour, shall be deemed guilty of a misdemeanor and, on conviction thereof, be fined not less than one dollar nor more than twenty-five dollars.'

" 'Sec. 776. Ringing bell of locomotive.— Any person or company who shall conduct, run or cause to be run any railway locomotive or engine, without ringing the bell attached thereto, before starting, and all the time such locomotive or engine shall be in motion within the corporate limits of this city, shall be deemed guilty of a misdemeanor and, on conviction, shall be fined not less than one nor more than twenty-five dollars.'

"Plaintiff further says that it was the duty of the defendant, and that its employés were required, under its rules in force at said time, that when backing a train of cars or a car attached to one of its engines through said switchyards to have placed upon the front end of the front car of said train of cars or car a brakeman or other employé for the purpose, and whose duty it was to keep a lookout and to give notice to any person who might be in the way of said car or cars. Plaintiff says that on said 3d day of September, 1909, he had occasion to be in said switchyard on business, and that the defendant's employés in charge of said yards knew of plaintiff's presence therein. Plaintiff says: That he had stopped in said yards and was standing at a point near one of said switch tracks in said yards in conversation with one of defendant's employés in charge of said yards. That after said conversation he started to walk down between two of defendant's switch tracks in said yards, and that while passing down said tracks and near to one of the same, not suspecting the approach of any train from the rear, defendant's operatives and employés in charge of one of its switch engines and train of cars backed the same down said track at an excessive and high rate of speed, to wit, more than six miles per hour, and without having the bell attached to said locomotive or engine at said time ringing, and without having any brakeman or other employé stationed upon the front car of said train of cars for the purpose of giving notice or warning to him of the approach of said train; or, if there was any person on said car at said time, he negligently failed to give any such notice. That said train of cars came with such suddenness upon the plaintiff as to take him unawares, and the corner of said car struck him, throwing him to the ground and running over and crushing his right arm be-

tween the wrist and elbow, necessitating the amputation thereof. Plaintiff says that the running of said train at said rate of speed in excess of six miles per hour; the running of same within the corporate limits of said city of Ft. Worth at said time without keeping the bell on said locomotive ringing while the same was in motion; and the failure of the defendant to have some one upon the front part of said train to give notice to plaintiff of its approach, or the failure of such one, if he was at said place, to give any such notice—were each and all acts and omissions constituting negligence, and that the negligence of the defendant in one or more of such particulars was the proximate cause of plaintiff's injuries."

The petition is not subject to the objections set forth in the assignment. It is not negligence per se for a party to enter the yards of the railroad company; especially is it not so where it is alleged, in effect, that said yards were open to and easily accessible to the public, and that the same were habitually used by the public, and great numbers of people daily resorted to and passed along, through, and across same, etc, which condition had existed for a great many years, with the consent of the company; nor does it show that plaintiff assumed the risks and dangers whereby he was injured. The petition stated a good cause of action, and the court did not err in overruling the general demurrer.

[2] The petition was not subject to a special demurrer, because said petition did not show any necessity, purpose, or reason for such use of the defendant's premises by the public as to make parties going thereon, as did plaintiff, licensees.

The allegation that the yards were commonly and habitually resorted to and used by the public, and had been for a long number of years, with the consent of the defendant, as a passway, was a sufficient allegation to show a right of action, and it was not necessary to be more specific in showing plaintiff was not a trespasser.

[3] Error is assigned that the verdict and judgment are not supported by the evidence. This assignment is not well taken. From the evidence, as shown by the record, we conclude that at the time of plaintiff's injury he was in defendant's switchyards situated in the city of Ft. Worth; that he was run over and his arm cut off by defendant's cars being backed north at a place in said yards, which was then, and had been for a long time prior thereto, so commonly, notoriously, and habitually used by the public and a great number of people other than defendant's employés, as a passway, that defendant had notice of said use, or by the exercise of ordinary care would have such notice, and acquiesced therein; that defendant's yardmaster, who had charge of its yards and was

directing the movements of the cars at the time, had actual notice of the presence of plaintiff in the yards at or about the place where he was injured. There was no one on the top of the foremost car to keep a lookout or give warning of its approach to any one in danger of being struck by it, or, if so, no warning was given. The bell of the engine was not ringing, as required by an ordinance of said city. The plaintiff was walking north about two or three feet from the west of the main line track, and had, just before starting, looked to see if there was any engine on said main line to the south, and there was none in view, and he could see down the track a distance of about 300 yards. He had walked about two car lengths when the string of cars backed against and injured him, as aforesaid. A string of cars was standing on the scale track, which was from 8 to 9½ feet west of the main line and parallel therewith. There was a space of three or four feet between the cars on the scale track and those that struck plaintiff. Had the bell been ringing, plaintiff could have heard same and avoided the injury; or, had there been a lookout kept and warning given of the approaching cars, the injury could have been avoided. In the manner stated defendant's servants were guilty of negligence in operating the train. Plaintiff had gone to the yards on business with one of defendant's employés Dick Woodall, and was not guilty of contributory negligence. The evidence warrants the verdict and judgment.

[4] The sixth assignment is that "the court erred in the fourth paragraph of the main charge to the jury, which reads as follows: 'If you believe from the evidence that the plaintiff, at the time alleged, was in the defendant's switchyards in the corporate limits of the city of Ft. Worth; and if you believe that the place where plaintiff was when injured was habitually used by the public, and that great numbers of people other than defendant's employés passed along and over said yards at and in the vicinity of said place; and if you believe that defendant knew, or by the exercise of ordinary care would have known, of such use by the public, and acquiesced therein; and if you believe that plaintiff was walking near defendant's track in said yard, and that while so walking one of defendant's trains or cars being operated in said yards ran against him, knocking him down and injuring him as alleged; and if you believe that it was the duty of the defendant to have had some one on the car next to the plaintiff to have given notice to plaintiff or any one who might be in the way of said train of the approach thereof; and if you further believe that no person was on said car, and that the failure to have such person at said place was negligence, or if you believe that there was some servant of defendant on said car, but that he failed to give such notice, and that such failure, if

any, was negligence; or if you believe that the defendant's servants failed to have the bell on the locomotive or engine propelling said train ringing while approaching the plaintiff; and if you believe that the failure, if any, to have said bell ringing, or the failure, if any, to have some person on said car to give notice to plaintiff, or the failure of such person, if on the car, to give such notice, as hereinbefore submitted, was the proximate cause of plaintiff's injuries; and if you believe that plaintiff was exercising ordinary care for his own safety—you will find for the plaintiff, unless you find for the defendant on other issues submitted to you.'"

The criticism of said charge is that it "is not a correct statement of the law and does not correctly apply the law to the facts of the case; nor is it warranted by the pleadings or the evidence, and is on the weight of evidence, and is confusing and misleading. The issues submitted by said charge were all raised by the evidence. It is true there was conflicting testimony as to each issue; but it was sufficient to support the verdict of the jury in behalf of plaintiff. This being true, it was proper for the court to submit such issues to the jury. The charge is not confusing, nor is it upon the weight of the evidence; neither is it calculated to mislead the jury.

[5] The seventh assignment is that: "The court erred in the fifth paragraph of the main charge to the jury, which reads as follows: 'If you believe from the evidence that at said time the plaintiff was in a state of intoxication, and that such condition of the plaintiff caused or contributed to his injury, you will find for the defendant. Or if you believe from the evidence that plaintiff was on the premises of the defendant without its consent, either express or implied, you will find for the defendant. In this connection, you are instructed that if said yards had for a long time been habitually used by the public, and the defendant had acquiesced in such use of its said yards by the public other than its employés, for such time and continuing to the time of plaintiff's injury, then the plaintiff would not be precluded from a recovery on account of a failure to get the express consent of the defendant to go on its yards; but such consent would be implied.' It was error to give the said charge because the same is not a correct statement of the law and does not correctly apply the law to the facts of the case and is not warranted by the pleadings or the evidence and is on the weight of evidence and is confusing and misleading. Especially was said charge erroneous in instructing that defendant's consent to plaintiff's being in the yard would be implied if it be acquiesced in the habitual use for a long time of its yards by the public for the reason that the evidence shows that plaintiff was struck and injured at a place in the yards that was seldom, if

ever, used by the public, and that other parts of its yards where there were fewer tracks and switches and less danger were used by the public with more or less frequency." The contention of appellant is, in effect, that the evidence fails to show that the place where the plaintiff was injured was used by the public in such a way for such length of time as to make it defendant's duty in operating trains to anticipate the presence of some person at said place and keep a look-out to prevent injury. On this issue the testimony was conflicting. The trial court evidently considered the testimony sufficient to raise the issue, for it not only gave the charge under consideration, but gave a special charge requested by counsel for appellant covering specially this precise point. The special charge reads: "The defendant had the right of the unobstructed use of its tracks in its yards at Ft. Worth for the passage of its switch engine and cars that were being switched in its said yards; and unless you believe from the evidence that there had, prior to the time of the accident, been such common, notorious, and habitual use of its yards at the place in said yards where the accident occurred as a path or footway by the public that the defendant would, in the exercise of ordinary care, have had notice thereof, then there was no obligation upon defendant as to the plaintiff to keep a lookout for him to discover his peril, if he was in a perilous position. Unless you believe from the evidence that the public had notoriously, commonly, and habitually used the tracks and yards at the point in the yard where the accident occurred, as a pass or footway in such manner and for such length of time that the defendant ought reasonably to have known and anticipated such use, then you are charged that the defendant's servants in charge of the engine would have been justified in assuming that the track was unobstructed by footmen, and, if you so believe, you will find for the defendant on the issue here submitted." The testimony warranted the submission of said issue. The interest of appellant was fully guarded by the court, and we are of the opinion that the contention of appellant is not well founded.

There are numerous assignments presented, which we have not discussed herein. Some of them complain of paragraphs of the court's charge. Some of them to the refusal to give special charges requested, and others of supposed error of omission and commission. We have duly considered all of them that have been presented. The charges refused, where applicable to the issues raised, were sufficiently covered by the main charge of the court. As to all of the assignments, we find none shows reversible error, and the judgment is affirmed.

Affirmed.